**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| In re: | CASE NO. 6-12-BK-14459-KSJ |
| **LIGHTHOUSE IMPORTS, LLC,** | CHAPTER 11 |
| Debtor. _____/ | |
| **WERNER TSA, LLC, and CURT WERNER,** | |
| Plaintiffs, | Adversary Proceeding |
| vs. | Case No. _____ |
| **WORLD OMNI FINANCIAL CORP.,** | |
| Defendant. _____/ | |

**COMPLAINT TO DETERMINE THE NATURE, EXTENT, AND VALIDITY OF LIENS**

Plaintiffs **WERNER TSA, LLC** and **CURT WERNER** (collectively the "Plaintiff" or "Werner"), creditors and parties-in-interest, and hereby files their Complaint against World Omni Financial Corp. (the "Defendant" or "WOFCO"), to determine the extent and priority of the Defendant's alleged liens in certain property of the Debtor's estate. In support thereof, Plaintiff states as follows:

**JURISDICTION AND VENUE**

1. On October 24, 2012 (the "Petition Date"), the Debtor, Lighthouse Imports LLC (the "Debtor"), filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Code").

2. Plaintiff is a creditor of the Debtor, and has standing to file this action.

1833843 v1

3. Defendant is an alleged secured creditor of the Debtor, and has filed Claim 49-2 in the Debtor's bankruptcy case.

4. This Complaint commences an adversary proceeding pursuant to Fed. R. Bankr. P. 7001 *et seq.*

5. Jurisdiction over this matter and over the Defendant is proper in this district, pursuant to 28 U.S.C. § 1334. Venue over this matter is proper in this district, pursuant to 28 U.S.C. §§ 1408 & 1409. This adversary proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157.

**COUNT I – DETERMINATION OF NATURE,
EXTENT, AND VALIDITY OF LIENS**

6. The Debtor is a Florida limited liability company with two members, Howard F. Hubler ("Hubler") and Midwest Financial Services Co., Inc. ("Midwest"). *See* Chapter 11 Case Management Summary (Doc. No 11)(the "Summary").

7. The Debtor was the operator of a car dealership in St. John's County, Florida, which sells new Toyota and Scion automobiles and used automobiles under the fictitious name of St. Augustine Toyota/Scion (the "Dealership").

8. To finance the Debtor's acquisition of the Dealership, the Debtor entered into loan agreements with the Defendant.

9. On February 4, 2013, the Defendant filed a proof of claim as Claim No. 49-1 ("Claim 49-1").

10. Claim 49-1 is plainly a claim based on various writings but did not include any supporting documentation.

11. Claim 49-1 also did not include any supporting documentation related to proof of perfection of the Defendant's alleged security interests.

12. Exhibit A to Claim 49-1 reflects the three separate loans that comprise the Defendant's claim of $23,412,965.55, together with an additional amount claimed for attorney's fees:

    a. Capital Loan with Debtor: $ 2,875,943.23

    b. Floor Plan Agreement with Debtor: $ 7,152,195.25

    c. Mortgage Loan on Real Property with LHT Real Estate: $ 13,343,804.61

    d. Legal Fees: $ 41,022.46

13. In response, on February 13, 2013, Plaintiff filed its Objection to Claim 49-1, stating that the Defendant had attached no documentation to support its claim, and reserving its rights to further object once it had reviewed the Defendant's documentation.

14. Subsequently, on March 1, 2013, the Defendant filed its amended Claim 49-2. This time, the Defendant attached some limited supporting documentation, namely:

    (a) a copy of the Promissory Note for the Mortgage Loan;

    (b) a copy of the Loan Agreement for the Mortgage Loan;

    (c) a copy of a Cross-Default and Cross-Collateralization Agreement; and

    (d) a copy of a Wholesale Floor Plan Security Agreement, with two amendments to the same.

15. Claim 49-2, the current claim of record, still does not include copies of other promissory notes related to the Capital Loan and the Floor Plan Agreement nor various other agreements, including a Used Floor Plan Security Agreement.

16. In addition, Claim 49-2 still does not include any evidence of perfection of the Defendant's alleged security interests.

17. The Wholesale Floor Plan Security Agreement attached to Claim 49-2 includes a description of Defendant's alleged personal-property collateral in § 2.2. The Defendant's "Collateral" is defined, *inter alia*, as "all general intangibles (including payment intangibles)."

18. On August 29, 2007, the Defendant filed a UCC-1 with the Florida Secured Transaction Registry, Instrument No. 200706411542, attempting to perfect its interests in the collateral described in the Wholesale Floor Plan Security Agreement (the "UCC-1"). The description in the UCC-1 includes the same language: "all general intangibles (including payment intangibles)."

19. However, on May 13, 2010, the Defendant filed a UCC-3 with the Florida Secured Transaction Registry, Instrument No. 201002500166, amending the UCC-1, and changing, *inter alia*, the description of collateral from "all general intangibles (including payment intangibles)" to "all general intangibles (including franchise rights)" (the "UCC-3").

20. Neither document is attached to Claim 49-2, nor is any document explaining the reason for the amendment of the collateral description in the UCC-3.

21. Upon information and belief, the Defendant filed the UCC-3 when it realized that it had not properly acquired a security interest in the Debtor's "franchise rights" and Toyota Dealer Agreement, which franchise rights are commonly known as "blue sky" rights in the Debtor's industry.

22. However, there is no document included in Claim 49-2 which indicates that the Defendant ever amended the Wholesale Floor Plan Security Agreement to actually describe and include the Debtor's "blue sky" rights as collateral.

23. Instead, the Wholesale Floor Plan Security Agreement expressly does not include any reference to a security interest in the franchise or blue sky rights, mentioning only rights to "general intangibles."

24. Moreover, the Debtor's franchise agreement, upon information and belief, expressly prohibits assignment of the Debtor's blue sky rights to any lender as collateral, making any such assignment void.

25. Accordingly, the Defendant does not have a valid security interest in the blue sky rights of the Debtor, which value is available for distribution to unsecured creditors.

26. On February 5, 2013, the Debtor filed a Motion for an Order Approving of Bidding Procedures and Authorizing a Sale of Substantially All of the Debtor's Assets (the "Sale Motion")(Doc. No. 87).

27. The Sale Motion includes a proposed Asset Purchase Agreement for a stalking horse (the "APA").

28. The APA in ¶ 2.1(f) provides that $10,000,000.00 of the purchase price is allocable to the goodwill and intangibles of the Debtor, and the APA expressly recognizes the primary value of the blue sky rights, including the Toyota Dealer Agreement.

29. Much if not all of the $10,000,000.00 attributable to "goodwill and intangibles" is not subject to the Defendant's security interest, and instead available for payment to unsecured creditors.

30. In light of this and other objections, on March 18, 2013, Plaintiff filed its Amended Objection to Amended Claim 49-2 (the "Amended Claim Objection"), restating that the Defendant had attached insufficient documentation to support its claim; arguing that based on the documents as attached and the fact that Defendant was accepting other collateral as payment, Defendant's claim should be marshaled; and reserving its rights to bring an adversary regarding the nature, extent, and validity of the Defendant's security interests.

31. Plaintiff hereby incorporates by reference the arguments and requests for relief sought by Plaintiff in the Amended Claim Objection, including those arguments related to the

transfer of the certain real property on which the dealership operates (the "Real Property") to the Defendant in partial satisfaction of the Defendant's claim, the value of which must be deducted from the total amount of Claim 49-2.

**WHEREFORE,** Werner respectfully requests the Court enter judgment determining that the Defendant's liens do not extend to the Debtor's franchise or blue sky rights or to any other rights, including rights under the Toyota Dealership Agreement, which are not properly described in the Debtor's loan documents; denying Claim 49-2 for failure to attach appropriate documentation; precluding Defendant from presenting any information omitted in Claim 49-2 which should have been attached; awarding Werner reasonable attorneys' fees and costs on account of Defendant's failure to attach the required documentation; or in the alternative, marshaling the security interests and allowing Defendant's claim only after deducting the value of the Real Property; together with such other and further relief as the Court deems just or proper.

**RESPECTFULLY SUBMITTED** this 26th day of March, 2013.

*/s/ Jon E. Kane*
**JON KANE, ESQUIRE**
Florida Bar No.: 814202
Email: jkane@burr.com
**MICHAEL A. NARDELLA, ESQUIRE**
Florida Bar No.: 51265
Email: mnardella@burr.com
BURR & FORMAN LLP
200 South Orange Avenue, Suite 800
Orlando, Florida 32801
Telephone: (407) 540-6600
Facsimile: (407) 540-6601
*Attorneys for Werner TSA, LLC and Curt Werner*